Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com

*Counsel for Plaintiffs
and the Proposed Classes*

## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATTLE AND BEEF ANTITRUST LITIGATION, | Case No. |
|                   Plaintiffs, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT** |
|      v. | |
| JBS S.A., et al., | Date:   February __, 2023 |
|                   Defendant. | Time: |
|      v. | Courtroom: |
| CENTRAL VALLEY MEAT CO, INC.; and HARRIS RANCH BEEF COMPANY, | |
|                   Respondents. | |

# **TABLE OF CONTENTS**

I.    DETAILS OF MEET AND CONFER EFFORTS .................................................... 1

II.   THE NATURE OF THE ACTION AND FACTUAL DISPUTES ........................ 4

III.  CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE AND
      MEMORANDUM OF EACH PARTY'S RESPECTIVE ARGUMENTS ...................... 5

    A.    Issue 1 – Motion to Compel Production of Documents by Central Valley ...................... 5

    B.    Issue 2 – Motion to Compel Production of Documents by Harris Ranch ...................... 11

    C.    Plaintiffs' Memorandum of Arguments and Legal Authorities ...................................... 16

        i.   Central Valley's and Harris Ranch's Objections are Waived .................................... 16

        ii.  Plaintiffs seek relevant documents from Central Valley and Harris Ranch and the
      requests are proportional to the antitrust case ............................................................. 17

        iii. Conclusion ................................................................................................................. 21

    D.    Central Valley's and Harris Ranch's Memorandum of Arguments and
      Legal Authorities ....................................................................................................... 21

        1.   Central Valley and Harris Ranch Received and Responded to The Subpoenas ......... 21

        2.   As a Non-Party to this Litigation, Central Valley and Harris Ranch's Untimely
      Objections Should Not Be Waived .............................................................................. 22

        3.   The Remaining Requests at Issue Are 1, 9, 10 and 11 ............................................... 24

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brinckerhoff v. Town of Paradise,*
    2010 WL 4806966 (E.D.Cal. Nov.18, 2010)................................................17

*Concord Board Corp. v. Brunswick Corp.,*
    169 F.R.D. 44 ..........................................................................................23

*Huene v. U.S. Dep't of Treasury, I.R.S.,*
    2013 WL 417747 (E.D. Cal. Jan. 31, 2013) ..............................................16

*Jeffcoat Enters., Inc. v. Charter Commc'ns, Inc.,*
    2020 WL 2104732 (E.D. Mo. May 1, 2020) ..............................................17

*Keefe v. City of Minneapolis,*
    2012 WL 7766299 (D. Minn. May 25, 2012) ............................................21

*Macro Techs., LLC v. Midkiff,*
    2020 WL 12442102 (D. Minn. Dec. 7, 2020) .....................................20, 21

*McCoy v. Southwest Airlines Cos., Inc.,*
    211 F.R.D. 381 (C.D.Cal.2002)...........................................................17, 23

*Scruggs v. Vance,*
    2011 WL 6368297 (E.D. Cal. Dec. 19, 2011) ..................................5, 11, 16

**Statutes**

15 U.S.C. § 15b.............................................................................................24

28 U.S.C. § 1407.............................................................................................4

44 U.S.C.A. § 3572(c)(1)..............................................................................19

**Rules**

Fed. R. Civ. P. 26.....................................................................................17, 21

Fed. R. Civ. P. 34.....................................................................................17, 21

Fed. R. Civ. P. 45..............................................................................5, 11, 16, 17

**TABLE OF AUTHORITIES**

This Joint Statement concerns discovery disputes between Plaintiffs[1] in a multi-district litigation antitrust class action pending in the District of Minnesota and two nonparty witnesses located in this District. Plaintiffs allege that the four largest meat packers in the United States conspired to fix and suppress the price of fed cattle. Under Rule 45, Plaintiffs in *In re Cattle Antitrust Litigation*, No. 0:19-cv-01222 (D. Minn.) served subpoenas on two independent meat packing companies, Central Valley Meat Co., Inc. and Harris Ranch Beef Company, seeking documents relevant to their antitrust claims.

Neither Central Valley nor Harris Ranch complied with the subpoenas. Meet and confer efforts failed to resolve the disputes over their non-compliance. Plaintiffs now file this Joint Statement re Discovery Disagreement in support of their (1) Motion to Compel Central Valley to produce all documents responsive to Plaintiffs' subpoena served April 25, 2022 and (2) Motion to Compel Harris Ranch to produce all documents responsive to Plaintiffs' subpoena served April 26, 2022. On December 15, 2022, a similarly situated nonparty independent packer, Nebraska Beef, Ltd., was ordered to comply with a substantially identical subpoena when its motion to quash was denied as to the vast majority of document requests in the United States District Court for the District of Nebraska. *See* Exh. 1 (the "Nebraska Discovery Dispute").

## I.     DETAILS OF MEET AND CONFER EFFORTS

In compliance with Local Rule 251, the parties have met and conferred both telephonically and in writing prior to filing this Joint Statement. As described below, the parties made extensive efforts to resolve their discovery disputes, but were unsuccessful. This Joint Statement concerns two separate motions to enforce individual subpoenas Plaintiffs served on Central Valley and Harris Ranch. Because the subpoenas are substantially identical, and Central Valley and Harris Ranch are represented by the same counsel who failed to timely object and then served substantially identical responses to the subpoenas, the meet and confer process encompassed both subpoenas and applied equally to both motions. A summary of the communications between the parties' attorneys regarding the discovery dispute follows:

---

[1] "Plaintiffs" refers collectively to the Cattle Plaintiffs, Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, Winn-Dixie Stores, Inc., and Bi-Lo Holding, LLC.

| June 22, 2022 | Plaintiffs' attorney, Josh Bloomfield, sent an email to Michael Helsley, counsel for Central Valley and Harris Ranch, requesting a telephonic meet and confer about the outstanding subpoenas, pursuant to which documents were to be produced on June 8, 2022. |
| --- | --- |
| June 28, 2022 | Having received no response to the June 22 email, Mr. Bloomfield sent a follow-up request for a telephonic meet and confer. |
| June 28, 2022 | Mr. Helsley responded via email and proposed a meet and confer call on July 1. |
| July 1, 2022 | Mr. Helsley emailed Mr. Bloomfield and requested a postponement of the meet and confer call to July 5 due to the press of business. |
| July 1, 2022 | Plaintiffs' attorney agreed to Mr. Helsley's postponement request and the meet and confer call was rescheduled for July 5. |
| July 5, 2022 | Mr. Bloomfield and Mr. Helsley met and conferred telephonically. Mr. Helsley said that his clients intended to comply with the subpoenas, but would need more time to determine what responsive documents they possessed and how to process the documents. Mr. Bloomfield volunteered to narrow some of the document requests and make other concessions to ease any burden on Central Valley and Harris Ranch. The parties agreed to continue to work together to resolve any outstanding issues and facilitate the production of documents responsive to the subpoenas. |
| August 2, 2022 | Mr. Bloomfield emailed Mr. Helsley to request another telephonic meet and confer. |
| August 2, 2022 | Mr. Helsley responded that he was "speaking with the client again tomorrow" and "will be able to give you a status thereafter." The parties agreed to schedule a telephonic meet and confer on August 5. |
| August 5, 2022 | Mr. Helsley's assistant emailed Mr. Bloomfield to advise him that Mr. Helsley "had some matters come up today and is not available." The parties agreed to postpone their scheduled meeting to August 11. |

2

| August 11, 2022 | Mr. Bloomfield and Mr. Helsley again discussed the outstanding subpoenas and the fact that no documents had been produced to date. Mr. Helsley again said his clients intended to comply with the subpoenas, but would need more time to determine what responsive documents they possessed and how to process the documents. |
|---|---|
| September 13, 2022 | Mr. Bloomfield sent a detailed meet and confer email to Mr. Helsley, noting that Central Valley and Harris Ranch were seriously delinquent in their obligations to produce documents responsive to the subpoenas, and that in the absence of immediate compliance, Plaintiffs would be "forced to bring motions to compel production." In an effort to increase efficiency and limit the costs of producing documents pursuant to the subpoenas, Mr. Bloomfield also provided a set of proposed search terms, and an example of of an agreement with another similarly situated nonparty whereby Plaintiffs would allow Central Valley and Harris Ranch to use Plaintiffs' eDiscovery review platform free of cost. |
| September 14, 2022 | Mr. Helsley responded via email, noting that his client "contact is out this week with very little access" and that more time would be needed for a substantive response. |
| September 27, 2022 | Mr. Bloomfield sent another email to Mr. Helsley, following up on the previous discussion and requesting a telephonic meet and confer. |
| September 28, 2022 | Mr. Helsley's assistant responded to advise that he was "in depositions the rest of this week," but offered to schedule a call the following week. The parties agreed to a meet and confer call on October 4. |
| October 4, 2022 | Mr. Bloomfield and Mr. Helsley met and conferred telephonically, with Mr. Helsley stating that his clients were not focused on their obligations under the subpoenas, and that motions to compel would likely be necessary. |
| November 18, 2022 | Mr. Bloomfield emailed Mr. Helsley requesting a final telephonic meet and confer. |
| November 30, | Having received no response to the November 18 email, Mr. Bloomfield sent a |

| | |
|---|---|
| 2022 | follow-up request for a telephonic meet and confer. |
| November 30, 2022 | Mr. Helsley's assistant responded to advise that he was "out of the office this week with the flu," and the parties agreed to set a call for December 2. |
| December 2, 2022 | Mr. Helsley's assistant emailed to advise that Mr. Helsley was "still out sick with the flu," and requested a postponent to December 5, to which Plaintiffs' counsel agreed. |
| December 5, 2022 | Plaintiffs' counsel and Mr. Helsley had a final telephonic meet and confer during which Mr. Helsley advised that nothing had changed on his clients' end, and that he understood motions to compel were forthcoming. |

## II.     THE NATURE OF THE ACTION AND FACTUAL DISPUTES

This discovery dispute arises out of nearly identical subpoenas served on nonparties Central Valley and Harris Ranch, in *In re Cattle and Beef Antitrust Litigation*, pending before Chief Judge Tunheim in the United States District Court for the District of Minnesota. The Cattle Plaintiffs filed the initial complaint in May of 2019, alleging that the "Big Four" meat packers that dominate the U.S. market – Tyson, JBS, Cargill and National Beef – conspired to and did in fact fix and suppress the price of fed cattle in the United States. Specifically, Plaintiffs allege that the Big Four agreed to reduce and restrain their collective slaughter volumes and to pressure cash cattle sellers, coordinated their procurement practices for cash cattle, uneconomically imported extra-territorial cattle to depress demand for fed cattle, and agreed to restrict their slaughtering capacity.

Multiple sets of plaintiffs have alleged related antitrust claims against the producers of beef, and purchasers of cattle in the United States. *Id.* The cases underlying the subpoenas have since been consolidated, into *In re Cattle and Beef Antitrust Litigation*, Case No. 20-cv-1319 (D. Minn). On June 3, 2022, the Judicial Panel on Multidistrict Litigation found that the case satisfied the standard for centralization as a multidistrict litigation pursuant to 28 U.S.C. § 1407, and centralized the action in the District of Minnesota. *In re Cattle and Beef Antitrust Litigation*, Case No. 22-md-3031 (JRT/JFD).

The District of Minnesota has denied Defendants' motions to dismiss, and issued multiple orders regarding the management of the case and scope of discovery.

On April 25, 2022, Plaintiffs served a subpoena upon Central Valley, and a substantially identical subpoena was served upon Harris Ranch the next day. Plaintiffs' subpoenas seek specific, targeted information about the fed cattle industry that is at the crux of Plaintiffs' conspiracy allegations and is uniquely in the possession of Central Valley and Harris Ranch, including but not limited to, information regarding these two independent packers' fed cattle purchases, their participation in the fed cattle and beef market, their assessments of their ability to compete with Defendants and the causes of the price movements at issue in Plaintiffs' suit, and possession of documents relevant to the underlying *In re Cattle and Beef Antitrust Litigation.*

Notably, in the Nebraska Discovery Dispute, a federal court recently determined that nearly identical document requests to a seperate nonparty meat packer similarly situated to Central Valley and Harris Ranch were both relevant and proportional to the needs of the case. *See* Exh. 1 at pp. 18-30. As was true in the Nebraska Discovery Dispute, Plaintiffs cannot obtain the requested information from Defendants because the documents and communications requested in the subpoenas are uniquely in the possession, custody, or control of Central Valley and Harris Ranch. Central Valley and Harris Ranch failed to serve timely written objections to the subpoenas on Plaintiffs, and have failed to produce a single document responsive to the subpoenas.

## III. CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE AND MEMORANDUM OF EACH PARTY'S RESPECTIVE ARGUMENTS

### A. Issue 1 – Motion to Compel Production of Documents by Central Valley

On April 25, 2022, Plaintiffs served on Central Valley a subpoena containing 11 document requests with a compliance deadline of June 8. The Federal Rules of Civil Procedure require that any "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." (F.R.C.P. 45(d)(2)(B)). The deadline for objections was thus May 9, 2022, but Central Valley didn't serve any response until June 6. Its response contained only boilerplate objections, and the dubious claim that "there are no documents responsive" to all but four of the 11 requests. Because these objections were nearly a month late, Central Valley has waived all objections to the subpoena. *Scruggs v. Vance*, No. 2:06-CV-0633 KJM KJN, 2011 WL 6368297, at *11 (E.D. Cal. Dec. 19, 2011) ("Thus, a nonparty's failure to timely make objections to a Rule 45 subpoena duces

tecum generally requires the court to find that any objection has been waived.") (cleaned up).

Plaintiffs' Requests Nos. 1-11, and Central Valley's responses, are set forth verbatim as follows:

REQUEST NO. 1:

Documents sufficient to show Your organizational structure including, but not limited to, any organizational charts.

RESPONSE TO REQUEST NO. 1:

Objection is made as this request is vague and ambiguous, and not limited in scope or time.

REQUEST NO. 2:

Documents and Communications discussing or analyzing non-Defendant Meat Packers' ability to: a) compete with the Defendants in the market(s) to purchase Fed Cattle for slaughter in the United States; b) compete with Defendants in the market(s) to sell Beef; and/or c) increase their market share in one or more of the markets addressed in subsections (a) or (b) of this Request.

RESPONSE TO REQUEST NO. 2:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 3:

Documents and Communications discussing or analyzing the effects of the Tyson Holcomb Plant fire on the U.S. market(s) for fed cattle and/or the U.S. market(s) for Beef.

RESPONSE TO REQUEST NO. 3:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and to the extent this is equally available to the Requesting Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this

6

request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 4:

Documents and Communications discussing or analyzing the decline of U.S. Fed Cattle prices in 2015.

RESPONSE TO REQUEST NO. 4:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and to the extent this is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 5:

Documents and Communications discussing or analyzing the supply of Fed Cattle available for slaughter in the United States and/or the U.S. Cattle cycle, including how these matters impact Fed Cattle and/or Beef prices.

RESPONSE TO REQUEST NO. 5:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and to the extent this is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 6:

All Documents that You provided to, or relied upon in responding either orally or in writing to any request from the U.S. Department of Justice, the U.S. Department of

Agriculture, any state or federal attorney general, Federal Trade Commission, White House, U.S. Congress, U.S. Government Accountability Office, Commodity Futures Trading Commission and/or the Chicago Mercantile Exchange ("CME") (collectively, the "Regulators") relating to an investigation of violation of federal, state, or international antitrust laws, competition laws, Packers and Stockyards Act, anti-monopoly laws, anticartel laws, unfair competition laws, Commodities Exchange Act, CME Rules, and any similar laws or regulations in the Cattle and Beef industries (collectively, "Regulatory Investigations"). Excluded from Regulatory Investigations are alleged breaches of the Packers and Stockyards Act that do not concern alleged anticompetitive conduct, and/or manipulation of Fed Cattle and/or Beef prices. This Request relates to Regulatory Investigations that concern conduct that took place all or part during the Relevant Period, whether the Regulator's request, or Your responsive production, was issued outside the Relevant Period.

RESPONSE TO REQUEST NO. 6:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 7:

All Documents Relating to Communications between you and any Regulator regarding a Regulatory Investigation. This Request relates to Regulatory Investigations concerning conduct that took place all or part during the Relevant Period, whether or not the Communication occurred during the Relevant Period.

RESPONSE TO REQUEST NO. 7:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the

**TABLE OF AUTHORITIES**

rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 8:

Documents and Communications discussing or analyzing a Defendant's: a) U.S. Fed Cattle procurement practices; b) U.S. Fed cattle slaughter levels, c) U.S. Beef production; d) U.S. Beef sales; e) impact on U.S Fed Cattle prices; and/or f) impact on U.S Beef prices. Included in this request are Documents and Communications discussing or analyzing a Defendants' use of any weekly purchase or "trading windows" (*Cattle* Operative Complaint, ¶158)[2] for Fed Cattle transactions, and/or any permanent or temporary boycott of Fed Cattle Producers or feedlots in the United States by any Defendant, including regional boycotts.

RESPONSE TO REQUEST NO. 8:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 9:

Transaction-level data for all of Your purchases of Cattle, including: all Cattle Purchase Data. This Request relates to the period from January 1, 2010 through December 31, 2020. Plaintiffs request this information in the most disaggregated form (meaning atthe transactional level, not aggregated by month or quarter) in which it is kept, and You should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, or any other purpose, Plaintiffs' request is for each separate set of data.

---

[2] *In re Cattle Antitrust Litigation*, 19-cv-1222 (JRT/HB) (D. Minn. Dec. 28, 2020), ECF No. 312.

9

RESPONSE TO REQUEST NO. 9:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

REQUEST NO. 10:

Documents and Communications discussing or analyzing the utilization of Your Cattle slaughter plants, including: a) any proposed, considered, or actual changes in plant utilization or capacity; b) any proposed, considered, or actual decision to buy, expand, close, sell, slow, or idle a plant; and/or c) slaughter and processing costs, including labor, energy, equipment, and all other non-Cattle costs associated with the operation of the plant.

RESPONSE TO REQUEST NO. 10:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

REQUEST NO. 11:

Any data dictionaries, data crosswalks, or data keys relevant to the requests above. This can include but is not limited to: (a) any files describing the variables or fields used in the structured data produced; (b) any files describing the contents/values of the variables (*e.g.*, all coded values); (c) any files which link ID codes (customer IDs, supplier IDs, SKUs, etc.) with their identification information; and (d) any files which explain or show the linkage of variables between datasets.

RESPONSE TO REQUEST NO. 11:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls

10

for speculation, and to the extent this is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

**B. Issue 2 – Motion to Compel Production of Documents by Harris Ranch**

On April 26, 2022, Plaintiffs served on Harris Ranch a subpoena containing 11 document requests with a compliance deadline of June 8. The Federal Rules of Civil Procedure require that any "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." (F.R.C.P. 45(d)(2)(B)). The deadline for objections was thus May 10, 2022, but Harris Ranch didn't serve any response until June 6. Its response contained only boilerplate objections, and the dubious claim that "there are no documents responsive" to five of the 11 requests. Because these objections were nearly a month late, Harris Ranch has waived all objections to the subpoena. *Scruggs*, 2011 WL 6368297, at *11. Plaintiffs' Requests Nos. 1-11, and Harris Ranch's responses, are set forth verbatim as follows:

REQUEST NO. 1:

Documents sufficient to show Your organizational structure including, but not limited to, any organizational charts.

RESPONSE TO REQUEST NO. 1:

Objection is made as this request is vague and ambiguous, and not limited in scope or time.

REQUEST NO. 2:

Documents and Communications discussing or analyzing non-Defendant Meat Packers' ability to: a) compete with the Defendants in the market(s) to purchase Fed Cattle for slaughter in the United States; b) compete with Defendants in the market(s) to sell Beef; and/or c) increase their market share in one or more of the markets addressed in subsections (a) or (b) of this Request.

RESPONSE TO REQUEST NO. 2:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the

---

11

rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 3:

Documents and Communications discussing or analyzing the effects of the Tyson Holcomb Plant fire on the U.S. market(s) for fed cattle and/or the U.S. market(s) for Beef.

RESPONSE TO REQUEST NO. 3:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Without waiving said objections, there are no documents responsive to this request.

REQUEST NO. 4:

Documents and Communications discussing or analyzing the decline of U.S. Fed Cattle prices in 2015.

RESPONSE TO REQUEST NO. 4:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

REQUEST NO. 5:

Documents and Communications discussing or analyzing the supply of Fed Cattle available for slaughter in the United States and/or the U.S. Cattle cycle, including how these matters impact Fed Cattle and/or Beef prices.

**TABLE OF AUTHORITIES**

RESPONSE TO REQUEST NO. 5:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

REQUEST NO. 6:

All Documents that You provided to, or relied upon in responding either orally or in writing to any request from the U.S. Department of Justice, the U.S. Department of Agriculture, any state or federal attorney general, Federal Trade Commission, White House, U.S. Congress, U.S. Government Accountability Office, Commodity Futures Trading Commission and/or the Chicago Mercantile Exchange ("CME") (collectively, the "Regulators") relating to an investigation of violation of federal, state, or international antitrust laws, competition laws, Packers and Stockyards Act, anti-monopoly laws, anticartel laws, unfair competition laws, Commodities Exchange Act, CME Rules, and any similar laws or regulations in the Cattle and Beef industries (collectively, "Regulatory Investigations"). Excluded from Regulatory Investigations are alleged breaches of the Packers and Stockyards Act that do not concern alleged anticompetitive conduct, and/or manipulation of Fed Cattle and/or Beef prices. This Request relates to Regulatory Investigations that concern conduct that took place all or part during the Relevant Period, whether the Regulator's request, or Your responsive production, was issued outside the Relevant Period.

RESPONSE TO REQUEST NO. 6:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

Without waiving said objections, no documents exists in response to this request.

REQUEST NO. 7:

All Documents Relating to Communications between you and any Regulator regarding a Regulatory Investigation. This Request relates to Regulatory Investigations concerning conduct that took place all or part during the Relevant Period, whether or not the Communication occurred during the Relevant Period.

RESPONSE TO REQUEST NO. 7:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, no documents exists in response to this request.

REQUEST NO. 8:

Documents and Communications discussing or analyzing a Defendant's: a) U.S. Fed Cattle procurement practices; b) U.S. Fed cattle slaughter levels, c) U.S. Beef production; d) U.S. Beef sales; e) impact on U.S Fed Cattle prices; and/or f) impact on U.S Beef prices. Included in this request are Documents and Communications discussing or analyzing a Defendants' use of any weekly purchase or "trading windows" (*Cattle* Operative Complaint, ¶158)[3] for Fed Cattle transactions, and/or any permanent or temporary boycott of Fed Cattle Producers or feedlots in the United States by any Defendant, including regional boycotts.

RESPONSE TO REQUEST NO. 8:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection

---

[3] *In re Cattle Antitrust Litigation*, 19-cv-1222 (JRT/HB) (D. Minn. Dec. 28, 2020), ECF No. 312.

14

is also made to the extent this request violates the attorney-client or work product doctrine. Without waiving said objections, no documents exists in response to this request.

RESEST NO. 9:

Transaction-level data for all of Your purchases of Cattle, including: all Cattle Purchase Data. This Request relates to the period from January 1, 2010 through December 31, 2020. Plaintiffs request this information in the most disaggregated form (meaning atthe transactional level, not aggregated by month or quarter) in which it is kept, and You should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, or any other purpose, Plaintiffs' request is for each separate set of data.

RESPONSE TO REQUEST NO. 9:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

REQUEST NO. 10:

Documents and Communications discussing or analyzing the utilization of Your Cattle slaughter plants, including: a) any proposed, considered, or actual changes in plant utilization or capacity; b) any proposed, considered, or actual decision to buy, expand, close, sell, slow, or idle a plant; and/or c) slaughter and processing costs, including labor, energy, equipment, and all other non-Cattle costs associated with the operation of the plant.

RESPONSE TO REQUEST NO. 10:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

15

REQUEST NO. 11:

Any data dictionaries, data crosswalks, or data keys relevant to the requests above. This can include but is not limited to: (a) any files describing the variables or fields used in the structured data produced; (b) any files describing the contents/values of the variables (*e.g.*, all coded values); (c) any files which link ID codes (customer IDs, supplier IDs, SKUs, etc.) with their identification information; and (d) any files which explain or show the linkage of variables between datasets.

RESPONSE TO REQUEST NO. 11:

Objection is made as this request is vague, ambiguous, overbroad, is unduly burdensome and not limited in scope or time. Objection is also made as this request lacks foundation and calls for speculation, and to the extent it is equally available to the Propounding Party. Objection is also made as this request calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information. Objection is also made to the extent this request violates the attorney-client or work product doctrine.

**C. Plaintiffs' Memorandum of Arguments and Legal Authorities**

**i. Central Valley's and Harris Ranch's Objections are Waived**

Rule 45 provides that written objections to a subpoena commanding the production of documents "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed.R.Civ.P. 45(c)(2)(B). "The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections." *Huene v. U.S. Dep't of Treasury, I.R.S.*, No. 2:11-CV-2110 JAM AC, 2013 WL 417747, at *5 (E.D. Cal. Jan. 31, 2013) (citation omitted); *see also Scruggs*, 2011 WL 6368297, at *11 ("Thus, a nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection has been waived.") (cleaned up).

Here, Central Valley's objections to the document requests were due no later than May 9 (14 days after service on April 25), and Harris Ranch's objections to the document requests were due no later than May 10 (14 days after service on April 26). Both entities served objections on June 6 – nearly a month after they were due under Rule 45(c)(2)(B). As such, Central Valley and Harris Ranch have

waived all objections and should be compelled to comply with their subpoenas.

## ii. Plaintiffs seek relevant documents from Central Valley and Harris Ranch and the requests are proportional to the antitrust case

As noted above, Central Valley and Harris Ranch waived all objections to the document requests when they failed to serve them timely. However, even if they were not waived, Plaintiffs would still be entitled to have the motions granted over those objections because the requests are relevant to Plaintiffs' claims and proportional to the needs of the case. *Federal Rule of Civil Procedure 45* authorizes issuance of a subpoena to command a nonparty to produce designated documents, electronically stored information, or tangible things in its possession, custody or control. *Fed.R.Civ.P. 45(a)(1)(A)(iii)*. The scope of discovery through subpoena is the same as that applicable to Rule 34 and to the other discovery rules. *See Fed.R.Civ.P. 45* Advisory Committee Notes 1991 Amendment; *see also McCoy v. Southwest Airlines Cos., Inc., 211 F.R.D. 381, 384 (C.D.Cal.2002); Brinckerhoff v. Town of Paradise, 2010 WL 4806966, *7 (E.D.Cal. Nov.18, 2010)*. Rule 34, pertaining to the discovery of documents, provides that requests "must describe with reasonable particularity each item or category of items" to be produced. *Fed.R.Civ.P. 34(b)(1)(A)*. Further, the information sought must be "relevant to any party's claim or defense  and proportional to the needs of the case". *Fed.R.Civ.P. 26(b)*.

Antitrust litigation is *deeply* fact-intensive and complex.  The proportionality of the information Plaintiffs seek must be weighed against that backdrop. *See* Fed. R. Civ. P. 26(b)(1).  While a Rule 45 subpoena request must be relevant and proportional to the needs of the case, "[r]elevancy in this context has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Jeffcoat Enters., Inc. v. Charter Commc'ns, Inc.*, No. 4:20-MC- 00112-AGF, 2020 WL 2104732, at *2 (E.D. Mo. May 1, 2020) (internal quotations omitted).

Here, the document requests fall squarely within the bounds of permissible discovery. The requests are appropriate and narrowly tailored, as they seek specific, targeted information about the fed cattle industry that is at the crux of Plaintiffs' conspiracy allegations and is uniquely in the possession of Central Valley and Harris Ranch. For example, Requests No. 2-8 seek documents and communications regarding various aspects of the U.S. beef market from the perspective of Central

Valley and Harris Ranch, and Requests No. 9-11 seek transactional and other information specific to Central Valley and Harris Ranch themselves. Plaintiffs cannot rely solely on Defendants to produce these materials, which are uniquely in the possession, custody, or control of Central Valley and Harris Ranch.

In fact, in ruling on a motion to quash a substantially identical subpoena to similarly situated nonparty independent packer Nebraska Beef, Ltd., Magistrate Judge Cheryl Zwart of the United States District Court for the District of Nebraska found that Requests No. 2, 3, 4, 5, 6, 8, 9, 10(a) and 10(b) are relevant[4]. *See* Exh. 1. Further, Judge Zwart found that Nebraska Beef's objections that the information sought by the subpoena was privileged, proprietary, confidential and unduly burdensome – the same objections Central Valley and Harris Ranch raise here - were meritless. In so ruling, Judge Zwart determined that the discovery sought was proportional to the needs of the case. *See, e.g.*, Exh. 1 at p. 19 ("[Nebraska Beef] has failed to show the burden and expense of responding is not proportional to the needs of the case.")

The same should be found here. In addition to being untimely, Central Valley's and Harris Ranch's boilerplate objections are without merit and should be rejected. First, Central Valley's and Harris Ranch's objections that nearly all of the document requests are "vague and ambiguous, overbroad, [ ] unduly burdensome amd not limited in scope or time" are belied by the text of the requests themselves. All requests are clear, well-targeted and limited in scope and time. Indeed, Schedule A, page one, paragraph three of both subpoenas states: "The Relevant Time Period for each request below is January 1, 2013 through June 30, 2020, unless otherwise noted." This time period is appropriate because the Class Period in the case has been defined as January 1, 2015 to present, and the Court ordered a structured data period of January 1, 2010 to December 31, 2020, and an unstructured data period of January 1, 2013 through June 30, 2020.

---

[4] Judge Zwart found the motion to quash moot with respect to Request No. 1, as Nebraska Beef had already produced an organizational chart. *See* Exh. 1 at p. 17. As to Request No. 11, the Court found that it did not have enough information about the burden it imposed, since Nebraska Beef – like Central Valley and Harris Ranch here – had not made an effort to determine how many responsive documents exist. *See* Exh. 1 at pp. 31-32.

18

Moreover, Plaintiffs have already narrowed the requests through proposed search terms. In a further effort to obtain Central Valley's and Harris Ranch's cooperation and alleviate the need for Court intervention, Plaintiffs repeatedly attempted to work with Central Valley and Harris Ranch to bring them into compliance with the subpoenas. Their persistent refusal to engage and act reasonably throughout this process is the driving force behind any claims of undue burden.

As for the objections that many of the requests seek documents "equally available to the Propounding [or Requesting] Party," this is not the case. To the contrary, the publicly available sources of data referenced in Plaintiffs' Complaint provide cattle purchase and beef sales data at an *aggregate* level. These agencies do not publish the non-aggregated and specific transactional data that is sought by the subpoenas and necessary for Plaintiffs' case. This type of proprietary information is uniquely in Central Valley's and Harris Ranch's possession and is not available from these federal agencies, such as the United States Department of Agriculture, which are bound by confidentiality provisions barring them from providing information specific to particular meat packers. *See e.g.* 44 U.S.C.A. § 3572(c)(1) ("Data or information acquired by an agency under a pledge of confidentiality for exclusively statistical purposes shall not be disclosed by an agency in identifiable form, for any use other than an exclusively statistical purpose, except with the informed consent of the respondent."). "Publicly available" aggregate data is not a meaningful substitute for the information sought by Plaintiffs. The fact that Central Valley and Harris Ranch routinely produce relevant information to federal agencies strongly demonstrates the feasibility and reasonability of Plaintiffs' requests.

Central Valley and Harris Ranch also object that nearly every request "calls for information which violates the rights of privacy, and requests confidential, trade secret and proprietary information." Judge Zwart dealt with this same objection when it was raised by Nebraska Beef, and found "no evidence that the documents requested are protected trade secrets, constitute strategic proprietary information, and/or [would] give the receiving party an unfair competitive advantage and insight into a competitor's analysis." Exh. 1 at p. 19. In addition, this objection flies in the face of Central Valley's and Harris Ranch's other objection that the information sought by the subpoenas is "equally available to the Propounding [or Requesting] Party." Setting aside this inherent contradiction, Plaintiffs have made appropriate accommodations regarding the production of private, confidential,

**TABLE OF AUTHORITIES**

trade secret and proprietary information through the protective order that has been issued in the underlying litigation.

The protective order served on Central Valley and Harris Ranch concurrently with the subpoenas in April more than adequately addresses any objections or concerns regarding the production of confidential proprietary information. The protective order, which was negotiated by attorneys representing the "Big Four" defendants in the underlying case, has already been used to protect proprietary information produced by numerous competitors in the cattle industry. It allows for both "confidential" and "highly confidential" designations, which prohibit documents from being made publicly available, used outside of the litigation, or made available to competing participants. Furthermore, it applies to third party productions, including those that will be made by Central Valley and Harris Ranch here. Protective Order, §14 ("Third parties from whom discovery is requested are parties to this Order and are entitled to the protections of this Order in responding to such requests.").

Plaintiffs repeatedly made Central Valley and Harris Ranch and their counsel aware of the protective order and provided them with ample opportunity to explain how it fails to address their boilerplate confidentiality objections. They have yet to explain how the protective order is insufficient in this regard. Overruling the same objection in the Nebraska Beef matter, Judge Zwart noted that "[Nebraska Beef] does not explain why the protective order already entered is sufficient to protect its interests." Exh. 1 at p. 28. Central Valley and Harris Ranch have likewise failed to explain an deficiency in the protective order. Their unfounded objections dictate the same conclusion.

Finally, Central Valley and Harris Ranch object to many of the requests on the grounds that they "violate the attorney-client or work product doctrine." They have failed even to attempt to meet their burden of establishing that any privilege applies. "[P]ursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Macro Techs., LLC v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 WL 12442102, at *4 (D. Minn. Dec. 7, 2020) (quoting *Keefe v. City of Minneapolis*, No. 09-cv-2941 (DSD/SER), 2012 WL 7766299, at *3 (D. Minn. May 25, 2012) (internal quotations and alterations omitted)); *see also* Fed. R. Civ. P. 34(c).

**TABLE OF AUTHORITIES**

According to Fed. R. Civ. P. 26(b)(5)(A), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Central Valley and Harris Ranch have provided none of this information. Instead they have made only conclusory assertions of "attorney-client or work product doctrine," with no further explanation. As the parties opposing production of documents based on claims of attorney-client privilege or work product protection, Central Valley and Harris Ranch have not met their burden of establishing that any privilege applies.

A review of Plaintiffs' subpoenas further confirms that they do not seek information that is likely to fall within the scope of the attorney-client privilege. As detailed above, the subpoenas seek specific, targeted information about the fed cattle industry at issue in this case, including, but not limited to information regarding Central Valley's and Harris Ranch's cattle purchases, participation in the beef industry, and possession of documents relevant to the underlying conspiracy claims alleged by the various Plaintiffs in the *In re Cattle and Beef Antitrust Litigation.* Even if some of the documents responsive to the requests are privileged, this does not support the wholesale failure to produce non-privileged responsive documents. *Midkiff*, 2020 WL 12442102, at *4.

### iii.  Conclusion

For all of the foregoing reason, both of Plaintiffs' motions should be granted in their entirety, and Central Valley and Harris Ranch should be ordered to comply with the subpoenas and produce all responsive documents in their possession, custody and control.

### D.  Central Valley's and Harris Ranch's Memorandum of Arguments and Legal Authorities

#### 1.  Central Valley and Harris Ranch Received and Responded to The Subpoenas

Both Central Valley and Harris Ranch are beef harvesting operations.  On or about April 16, 2019, Central Valley purchased Harris Ranch and its operations.  On April 25, 2022 and April 26, 2022, respectively, Central Valley and Harris Ranch were served with subpoenas subject to this motion.

21

1    Both entities reviewed the subpoenas, and as non-parties, the requests were burdensome,

2    ambiguous and unreasonable.  For example, after the purchase of Harris Ranch in April 2019, Central

3    Valley would not know of or be in possession of most of the information and documents requested

4    prior to April 2019 for Harris Ranch.  Furthermore, Central Valley meat's operations processes only a

5    small portion of Fed Cattle, representing only 5% to 10% of its operations.  As such, it would be

6    extremely burdensome for it to have to scour through hundreds of thousands of pages of documents, if

7    not millions, page by page, just to locate information related to Fed Cattle.  The Fed Cattle documents

8    are not kept separately from other non-Fed Cattle documents.  In addition, the subpoenas requested any

9    data dictionaries, data crosswalks, or data keys, and in its beef harvesting operations, neither Central

10   Valley nor Harris Ranch had any idea what this request meant.  Furthermore, the subpoena requested to

11   communications between either Central Valley or Harris Ranch and any Regulator regarding a

12   Regulatory Investigation.  Neither Regulator nor Regulatory Investigation were defined and Central

13   Valley and Harris Ranch did not understand the request.  In addition, they did not believe that

14   discussions with any regulator regarding any topic or issue was pertinent or relevant.

15   Given their concern and confusion, on June 2, 2022, Central Valley and Harris Ranch forwarded

16   the subpoenas to Wanger Jones Helsley ("WJH").  WJH worked with both entities to determine if

17   information existed in response to the requests, the burden it would be to produce it, and whether the

18   entities understood what the subpoenas were requesting.  On June 6, 2022, only four days after WJH

19   received the subpoenas from the entities, it provided responses and objections to the subpoenas.

20   In the June 6, 2022, responses, both entities provided responses to questions for which no

21   information existed.  In specific, of the eleven requests, they did not have information for requests

22   numbers 2, 3, 6, 7 or 8 and stated as much in its response.  Prior to this motion, it was also determined

23   that Central Valley and Harris Ranch did not have information in response to requests 4 or 5.

24   Therefore, the remaining requests are 1, 9, 10 and 11.[5]

25   **2.  As a Non-Party to this Litigation, Central Valley and Harris Ranch's Untimely Objections**

26   **Should Not Be Waived**

27

28   _____
[5] Counsel for Central Valley and Harris Ranch notes that the Gibbs Law Group has been very professional in working with WJH and in its meet and confer efforts.

22

The moving party is correct, in that the failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections. However, in certain unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections. (*Concord Board Corp. v. Brunswick Corp.* 169 F.R.D. 44, 48 (S.D.N.Y. Oct. 21, 1996; *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D.Cal.2002.) Courts find such unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery (2) the subpoenaed witness is a non-party acting in good faith and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena. (*Concord Board Corp.,* 169 F.R.D. at 48.)

As aforementioned, Central Valley and Harris Ranch received the subpoenas. The subpoenas were overbroad and confusing in that they requested all communications with and regulator regarding any regulatory investigation from January 1, 2013 through June 20, 2020, including any conduct that occurred outside of this time period that was investigated within it. This could mean investigations by OSHA, the DOL, the DLSE, the USDA, the EDD, or other regulatory agencies that had nothing to do with issue in the underlying lawsuit. In addition, the subpoena requested information about Fed Cattle, which would require Central Valley to sour hundreds of thousands of documents, if not millions, over the course of almost seven years, just to find information related to Fed Cattle, which represents less than 10% of its operations.

In addition, for all of the requests, the relevant time period stated in the subpoenas is January 1, 2013 through June 20, 2020, and another request, number 9, request Cattle Purchase Data from January 1, 2010 through December 31, 2020. This Cattle Purchase Data as defined in the subpoenas includes a search and production of all pricing information, delivery period, contracts, cattle type, quantity, breed, discounts, rebates, where cattle came from, seller's name, cattle country or origin, costs, data points to calculate, quality, profit, yields, and other defined information, for all purchases of cattle. This 10 year requests is extremely overbroad and incredibly burdensome, especially when the statute of limitations is four years for an alleged violation of the Sherman Act 15 U.S.C. § 15b. As aforementioned, request number 11 also requested data keys, data dictionaries or data crosswalks for all the information produced as well. Therefore, the subpoenas were overbroad on their face.

**TABLE OF AUTHORITIES**

Furthermore, Central Valley and Harris Ranch, a non-party, have acted in good faith. Given the nature of the subpoenas and their questions, they contacted WJH to assist them in responding. Four days after, WJH received the subpoenas, responses were provided with objections. The responses all indicated where documents did not exists and in other questions, objections were made given the nature, burden and overbroad requests. In addition, as aforementioned, counsel for Plaintiffs and WJH have been in communication prior to this motion. For all the forgoing reasons, good cause exists to find that Central Valley and Harris Ranch have not waived their right to state objections to the requests.

### 3. The Remaining Requests at Issue Are 1, 9, 10 and 11

The remaining requests at issue are 1, 9, 10 and 11. Central Valley and Harris Ranch already responded on June 6, 2022, stating that no documents exists for the other requests. Granted, as for request number seven, regarding communications with regulatory agencies, it was so overbroad that it was impossible for either entity to respond. Documents may exists, but it would require clarification on what is being requested. As for request number 1, there are not organizational charts per se, but presumably, one can be created for each entity.

Regarding request number 9, for Cattle Purchase Data, as stated above, the request seeks information from January 1, 2010 to December 31, 2020, and includes in its definition extensive categories of requested information. For Central Valley, it would require it to go through hundreds of thousand, if not millions of pages of documents to find where the Fed Cattle purchase data is, as it only represents 5% to 10% of its purchases. This information is not kept separate from other purchases. For Harris Ranch, the data also exists, but it would be a burden to have to go back 13 years and go through hundreds of thousands of documents to determine which are Fed Cattle purchases versus other purchases. This is especially pertinent when there is a four year statute of limitations on the claims.

Regarding request number 10, regarding documents and communications of changes in the plant operations, utilization, capacity, to expand, sell, processing costs and other costs in its operations, Central Valley purchased Harris Ranch in April 2019. Therefore, it has no knowledge of any information regarding Harris Ranch for this request prior to April 16, 2019. After April 16, 2019, a Hot Box and Kill Floor were built for increased capacity, in 2019 there was an increase in labor (employees) and in 2020 there was a decrease in labor. However, it is unclear if the request is seeking

**TABLE OF AUTHORITIES**

why labor increased or decreased, the cause of it, what documents support the increase or decrease, or why this information is needed from the short time period. As for Central Valley, it also built a Hot Box, Kill Floor, and Boning Room from January 1, 2010 to December 31, 2020. However, the request seeks all documents and communications regarding the costs, labor, energy, equipment and all other non-Cattle costs associated with the operation of the plant. This request is overbroad and ambiguous, and depending on all documents they seek for the costs, labor and energy, and non-Cattle costs, this could be extremely burdensome to have to gather this information.

Regarding request number 11, and data keys, data dictionaries or data crosswalks, as requests numbers 9 and 10 are ambiguous, overbroad and burdensome, it is unknown whether data keys, data dictionaries or data crosswalks exist.

It should be reiterated, that Plaintiffs' counsel has been professional in working with Central Valley and Harris Ranch's counsel in this discovery dispute. For several requests, however, documents do not exists or are not in the possession custody or control of the two entities, and for others as framed and defined, the requests are overbroad, ambiguous and/or would cause an undue burden for the entities to respond to the requests.

For all the foregoing reasons, Central Valley and Harris Ranch respectfully request that this Court deny Plaintiffs' motions to compel.

Dated: February 1, 2023                    Respectfully submitted


                                           */s/ Joshua J. Bloomfield*
                                           **GIBBS LAW GROUP LLP**
                                           Michael L. Schrag (SBN 185832)
                                           Joshua J. Bloomfield (SBN 212172)
                                           1111 Broadway, Ste. 2100
                                           Oakland, California 94607
                                           Telephone:  510-350-9700
                                           Facsimile:  510-350-9701
                                           mls@classlawgroup.com
                                           jjb@classlawgroup.com

                                           *Counsel for Plaintiffs and the Proposed Classes*

By: _/s/ Michael S. Helsley_

**WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile:  (559) 233-9330
mhelsley@wjhattorneys.com

_Counsel for Respondents Central Valley Meat Co, Inc. and Harris Ranch Beef Company_

TABLE OF AUTHORITIES